IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Covert Manufacturing, Inc., | Case No. 1:07 CV 516 |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| -vs- | JUDGE JACK ZOUHARY |
| Cadillac Products Automotive Company, | |
| Defendant. | |

**BACKGROUND**

Plaintiff Covert Manufacturing has moved for summary judgment against Defendant Cadillac Products, asking the Court to find as a matter of law there were no implied or express warranties (Doc. No. 44). These warranties are set forth in Cadillac's Counterclaim (Doc. No. 7) in response to Covert's Complaint (Count I) for breach of contract (Doc. No. 1). Cadillac has opposed the Motion (Doc. No. 47), and Covert has replied (Doc. No. 59). A Hearing was held on the Motion on August 20, 2008 (Doc. No. 61), and this Order supplements that Record.

**JURISDICTION**

Jurisdiction of this Court is proper under the diversity statute of 28 U.S.C. § 1332. Plaintiff Covert Manufacturing is an Ohio corporation. Defendant Cadillac Products is a Michigan corporation. The amount in controversy exceeds $75,000.

**STANDARD OF REVIEW**

Pursuant to Federal Civil Rule 56(c), summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." *Id.* When considering a motion for summary judgment, the Court must draw all inferences from

the record in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, the Court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

## OVERVIEW

Covert designed and sold tools and dies to Cadillac for use in the manufacture of vehicle door inner liners that act as moisture and sound barriers, referred to as Trim Integrated Acoustic Shields (TIAS), part of a General Motors Truck 900 Program (GMT 900 Program).

Cadillac encountered problems with its manufacturing and blamed some of these problems on Covert's tooling. Cadillac refused to pay Covert in full, Covert filed this action claiming it is owed more than $500,000, and Cadillac countered with alleged breaches of implied and express warranties.

Between August and December 2005, Covert issued three separate quotes for nine sets of tooling, containing technical specifications and reflecting various revisions negotiated with Cadillac. Purchase orders were issued by Cadillac in response to quotes from Covert. Around December 2005, Covert began its design and build of the tooling. Representatives of both parties, and others, were involved in the design and build of the GMT 900 Program tooling. Covert received authorization from Cadillac to ship the tools between June and September 2006.

In October 2006, Cadillac was unable to successfully produce parts for its customers. Various recommendations were made, but Cadillac continued to experience "press parallelism" issues with the Program. By November, Cadillac decided to abandon all die-cutting for the GMT 900 Program.

Covert disputes the existence of any warranties due to the unproven nature of Cadillac's manufacturing process, Cadillac's superior knowledge of its manufacturing process, Cadillac's failure to communicate critical information, and Cadillac's failure to provide equipment of sufficient precision to operate the Covert tooling. Covert contends it built the tooling according to the agreed specifications and design approved by Cadillac, and that Cadillac's inability to die-cut is due to Cadillac's manufacturing process, which was beyond Covert's control or knowledge.

### IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE

The parties agree that evidence of the alleged warranties comes by way of oral proof. The parties further agree they are "merchants" under the Uniform Commercial Code and, in this regard, on equal footing. R.C. § 1302.01(A)(5). Under R.C. § 1302.28, an implied warranty of fitness for a particular purpose requires (1) a seller be aware at the time of contracting of the particular purpose for which the buyer intends to use the goods, and (2) the buyer rely on the seller's skill or judgment for that particular purpose. Plaintiff concedes that the first prong is met, but claims there has been no reliance. Cadillac provided Covert with a request for quote (RFQ) which specified certain tooling and design requirements. Covert also points to Cadillac's "high degree of knowledge regarding its own manufacturing process," but acknowledges there were a number of back and forth communications as the parties worked to find the right tooling for this process. Cadillac argues discretion remained with Covert to determine the proper design elements for the tooling.

The Court finds there is a question of material fact as to whether Cadillac relied on Covert, precluding summary judgment on this implied warranty. The primary case cited by Covert is *Price Bros. Co. v. Philadelphia Gear Corp.*, 649 F.2d 416 (6th Cir. 1981). In that case, the Sixth Circuit held it was "unreasonable" for the buyer to "completely defer" to the seller to select components for

3

the buyer's "unique equipment" when the buyer's "knowledge and skill and specific purchase order make actual reliance . . . so unlikely that a finding of such reliance would be clearly erroneous." *Id.* at 424. The instant case is distinguishable because, under this Record, a finding of reliance by Cadillac would not be "clearly erroneous," as it would not be "unreasonable" for Cadillac to "completely defer" to Covert's expertise on the key design aspects of the tooling for Cadillac's equipment. After all, that's why Cadillac hired Covert and sought its input. Plaintiff conceded at the Hearing that Cadillac issued an RFQ and relied on Covert's expertise to come up with a design that would work with the GMT 900 Program.

## IMPLIED WARRANTY OF MERCHANTABILITY

R.C. § 1302.27 sets forth a checklist of characteristics that must be present in order for goods to be deemed "merchantable." In *Price Bros.*, the Sixth Circuit, interpreting R.C. § 1302.27, held that "[g]oods are not of an acceptable quality when compared to that generally acceptable in the trade for goods of the kind." *Price Bros.*, 649 F.2d at 424. This implied warranty requires a standard of comparison. When there is no product comparable in the trade and no proof of a past record on which to determine an ordinary purpose, there can be no implied warranty of merchantability. *Id*. Additionally, such an implied warranty is less likely to be found when the goods are highly complex. *Id.*

The parties agree the GMT 900 Program was new and required custom-made tooling. Never before had there been an attempt to process acoustic shields in a tool that combined forming and trimming. Cadillac claims that because the tool did not cut consistently, it failed the warranty of merchantability. The Court disagrees. The real claim by Cadillac is that this specialized tooling did not work with Cadillac's new manufacturing process. Cadillac has not referenced any industry

4

standards that the tooling failed to meet.  Therefore, the Court grants Plaintiff's Motion on this implied warranty.

### EXPRESS WARRANTIES

Covert moves for summary judgment on three express warranties: (1) Cadillac's process would operate at 15-second cycle time; (2) the tools would compensate for Cadillac's presses; and (3) the manufacturing process using Covert tools would produce the parts required by Cadillac's customers (Counterclaim Count II).

Under R.C. § 1302.26, an express warranty arises when statements, promises, or descriptions concerning the product become part of the "basis of the bargain" between the parties.  Express warranties need not be part of a written agreement but may be added by proof of oral statements. *Price Bros.*, 649 F.2d at 422.  "[A] seller's awareness of a customer's needs and affirmation a product will meet those needs are sufficient to create an express warranty." *Bobb Forest Prods., Inc. v. Morbark Indus.*, 151 Ohio App. 3d 63, 81 (2002).  Therefore, Cadillac needs to prove that Covert made a promise, and that the promise became a part of the bargain.

With respect to the first two alleged express warranties -- the 15-second cycle time and the tooling could compensate for parallelism issues with the press -- Cadillac is able to cite specific references (who, what, when) of promises allegedly made.

As to the specific evidence offered to support the 15-second cycle time warranty, Cadillac points to statements in Todd Luczack's deposition where he states he discussed the 15-second requirement with Damon Bart and Hiten Shah at a meeting about the tooling (Luczack Dep. p. 101; see also Luczack Aff. ¶ 7).  Further, statements from Damon Bart's deposition support Todd Luczack's testimony.  "[H]e'd told me that they wanted to make sure they could do at least four hits

5

a minute so it would be a 15-second cycle time . . . . [A]t this point we are trying to sell the tool and I had mentioned to Hiten [Shah] that it would not be a problem at all . . ." (Bart Dep. p. 35).

In support of the express warranty that the tooling was capable of compensating for Cadillac's press issues, Cadillac cites Damon Bart's testimony that "I would have assured him or assured Todd [Luczack] that the heel block and pins and bushings on our trim tools would overcome any variance in the press . . ." (Bart Dep. p. 58). Cadillac also cites Randall Behm's testimony, which supports Damon Bart's testimony (Behm Dep. pp. 110-11).

With respect to the last express warranty (the success of the parts ultimately produced in Cadillac's process), Cadillac can point to no such oral promise. Therefore, the Motion is denied for the first two express warranties and granted for the third express warranty.

## CONCLUSION

Plaintiff's Motion is granted in part and denied in part for the reasons stated at the Hearing and supplemented by this Order. Under the Record developed to date, it is not clear what role, if any, the surviving warranties played in causing the ultimate failure of the tooling, and whether Covert, Cadillac, or other parties who provided components used in Cadillac's process, were responsible for the failure. These issues remain for trial.

IT IS SO ORDERED.

    s/ *Jack Zouhary*
JACK ZOUHARY
U. S. DISTRICT JUDGE

September 2, 2008